UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>Raymundo OREGEL-OROZCO,<br><br>                              Defendant. | Case No.:  19-mj-24594-AGS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO BAR COURTHOUSE ARREST OR STAY PROCEEDINGS (ECF No. 37)** |

Defendant is charged with misdemeanor attempted improper entry by an alien. He fears that—even if acquitted at trial—immigration officers will arrest him in the courtroom to begin removal proceedings. The prospect of such a courtroom immigration arrest, he argues, defies common-law principles and chills his constitutional rights to a fair criminal trial.

If this looming arrest indeed violates his rights, defendant could bring a pre-emptive civil suit for injunctive and declaratory relief to bar such courthouse detentions. Or he could wait for a wrongful arrest to happen and then sue the offending officials in a civil-rights lawsuit for money damages and equitable relief. Both these options would afford immigration officials notice, an opportunity to be heard, and other protections. *See, e.g.*, Fed. R. Civ. P. 65 (injunction requirements).

But defendant has not pursued such civil procedures. Instead, he moves for an order in this criminal case to "prohibit his unlawful and unconstitutional civil arrest at court."

1

(ECF 37, at 1.) Even if it were wise for this request to proceed in a criminal action, rather than a civil suit, this Court is not empowered to grant what amounts to an injunction against a non-party federal agency. *See* 28 U.S.C. § 636. So, the motion is denied.

## BACKGROUND

Defendant Raymundo Oregel-Orozco is currently on pretrial release, awaiting trial on the misdemeanor charge of attempted improper entry by an alien, in violation of 8 U.S.C. § 1325. (*See* ECF 1, 8, 9.) He worries that Immigration and Customs Enforcement will detain him after trial either "in court or in the hallway outside the courtroom" to put him in removal proceedings. (*See* ECF 37, at 2.) According to Oregel and several declarants, "[i]mmigration officers routinely follow defendant[s] to their court appearances and then sit in the gallery to see what happens in the criminal case." (*Id.*; *see also* ECF 43-1, at 3-4, 6-9, 11-13, 15-17, 19-20 (declarations from Federal Defender attorneys).) So Oregel urges this Court to exercise its "broad supervisory powers" in order "to ensure that Mr. Oregel is not irreparably injured by civil deportation arrest at the courthouse." (ECF 37, at 5.) Alternatively, Oregel requests a stay while he seeks an appeal or writ of mandamus. (*See* ECF 37, at 15-17.)

## DISCUSSION

**A.    Motion to Bar Immigration Arrest at Courthouse**

To decide Oregel's motion to prohibit courthouse arrest, this Court must first define the nature of the relief sought and determine whether magistrate judges are authorized to grant it.

**1.  *Is Oregel Seeking an Injunction?***

Oregel's requested prohibition on courthouse arrests seems to be an injunction, which is "the means by which a court tells someone what to do or not to do." *See Nken v. Holder*, 556 U.S. 418, 428 (2009). Indeed, all four courthouse-arrest cases that Oregel relies on involved civil suits for injunctions against ICE or its parent, the Department of Homeland Security. *See New York v. ICE,* No. 19-cv-8876(JSR), 2020 WL 3067715, at *1 (S.D.N.Y. June 10, 2020) ("[P]laintiffs here seek injunctive and declaratory relief against

ICE's current courthouse arrest policy . . . ."); *Washington v. DHS*, No. C19-2043 TSZ, 2020 WL 1819837, at *6 (W.D. Wash. Apr. 10, 2020) (same); *New York v. ICE*, 431 F. Supp. 3d 377, 381 (S.D.N.Y 2019) (same); *Ryan v. ICE*, 382 F. Supp. 3d 142, 146 (D. Mass. 2019) (enjoining ICE "from civilly arresting parties, witnesses, and others attending Massachusetts courthouses on official business"), *vacated and remanded*, No. 19-1838, 2020 WL 5201945 (1st Cir. Sept. 1, 2020).

Yet Oregel argues that he is not seeking an injunction at all, but merely asking the Court to exercise its supervisory powers. He points to cases that uphold a judge's inherent supervisory authority to control the courtroom and ensure respect for litigants' rights while court is in session. (*See* ECF 43, at 5 (collecting cases).) But this type of courtroom control falls far short of Oregel's demand. In his motion, he implores the Court to "order the Government not to civilly arrest Mr. Oregel coming to or going from his court appearance." (ECF 37, at 2.) Such an order would cover time when the Court was not in session at all, or at least not in session on Oregel's case. In fact, Oregel's primary concern is that he'll be arrested immediately after sentencing or acquittal, when his criminal case is completely over. Thus, his request is broader than this Court's authority to maintain order and decorum during courtroom sessions. It is an injunction.

### 2. *May This Court Issue Injunctions?*

At oral argument, Oregel argued in the alternative that—even if his requested order qualifies as an injunction—this Court is authorized to grant that relief in a criminal case. The "font of magistrate judge authority" is 28 U.S.C. § 636. *Roell v. Withrow*, 538 U.S. 580, 587 (2003). Although that statute gives magistrate judges "the power to conduct [misdemeanor] trials," 28 U.S.C. § 636(a)(3), it does not explicitly authorize them to issue injunctions. *See also* 18 U.S.C. § 3401 (allowing magistrate judges to "try" and "sentence" individuals "accused of a misdemeanor").

Oregel argues persuasively that 28 U.S.C. § 636(b)(1)(A)—which explicitly prohibits magistrate judges from ruling on "a motion for injunctive relief"—does not apply in the context of misdemeanor trials. Specifically, he notes that this subsection also bars

magistrate judges from disposing of motions "to suppress evidence in a criminal case," 28 U.S.C. § 636(b)(1)(A), but they routinely rule on such motions in misdemeanor proceedings. That argument is beside the point. Even if subsection 636(b)(1)(A) doesn't apply, nothing else in the statute affirmatively authorizes magistrate judges to issue injunctions in misdemeanor cases. So, this Court has no power to provide the requested relief. *See Teczon-Marin v. Dembin*, Case No. 3:20-cv-01493-LAB, ECF No. 8, at 3 (S.D. Cal. Aug. 10, 2020) ("Judge Dembin couldn't enjoin Teczon-Marin's arrest: Magistrate Judges are not authorized by law to issue injunctive relief.").[1]

### B. Motion for Stay Pending Appeal

That leaves only the question of whether to stay this case so that Oregel can seek an interlocutory appeal or writ of mandamus. In ruling on such a stay, the Court must consider four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;" (2) "whether the applicant will be irreparably injured absent a stay;" (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding;" and (4) "where the public interest lies." *Nken*, 556 U.S. at 434 (citation omitted). "The first two factors of the traditional standard are the most critical." *Id.*

The first two critical factors cut against Oregel. As to the first one, no matter how strong the other factors are, Oregel must show that he has "more than a mere possibility of relief." *Nken*, 556 U.S. at 434 (alteration and citation omitted). Oregel provides no case law or convincing argument to suggest that this Court has authority to issue the broad restriction he wants in this criminal case. So he has not made a "strong showing" that he is likely to succeed on the merits. As to the second factor, Oregel has not shown that denying

---

[1] As magistrate judges lack the power to issue injunctions, this Court need not address Oregel's various arguments justifying that relief. The Court notes, however, that the First Circuit recently held that courtroom immigration arrests do not violate the common-law privilege against courthouse arrests. *See Ryan v. ICE,* ___ F.3d ___, No. 19-1838, 2020 WL 5201945, at *12 (1st Cir. Sept. 1, 2020). This ruling undercuts one of Oregel's central arguments for an injunction.

the stay will cause irreparable injury. Oregel may still obtain his desired injunction; he simply must get it in a civil suit. Thus, his motion for a stay of this criminal case must fail.

## CONCLUSION

In his motion to bar courthouse arrest, Oregel attempts to jam the square peg of civil injunctive relief into the round hole of his criminal trial. Unlike the Criminal Rules, the Federal Rules of Civil Procedure establish mechanisms for expedited and temporary injunctive relief. *See* Fed. R. Civ. P. 65. Oregel is free to pursue that relief in a civil action, just like the plaintiffs in the four courthouse-arrest cases he relied on. But his motions to bar courthouse arrest in this criminal case and to stay these proceeding are both **DENIED**.

Dated:  September 18, 2020

Hon. Andrew G. Schopler
United States Magistrate Judge